Case 2:06-cr-00210-LDW   Document 10   Filed 05/02/06   Page 1 of 30 PageID #: 20

MAY 02 2006

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LONG ISLAND OFFICE

```
-----------------------------X   Docket#
UNITED STATES OF AMERICA,        :   06-cr-210(ETB) (LDW)
                                 :
        - versus -               :   U.S. Courthouse
                                 :   Central Islip, New York
GREG DEPETRO,                    :
                Defendant        :   March 30, 2006
-----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE E. THOMAS BOYLE
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:   **Roslynn R. Mauskopf, Esq.**
         United States Attorney

      BY: **Burton Ryan, Esq.**
         Assistant U.S. Attorney
         610 Federal Plaza
         Central Islip, New York


**For the Defendant**:   **Jeffrey Rabin, Esq.**



**Official Transcriber**:  **Rosalie Lombardi**

          **L.F.**



**Transcription Service**:  **Transcription Plus II**
         823 Whittier Avenue
         New Hyde Park, N.Y.   11040
         (516) 358-7352


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

---

Transcription Plus II     Rosalie Lombardi

**Proceedings**

```
 1              THE CLERK:  Calling case 06-cr-210, United
 2  States v. DePetro.
 3              Counsel, please state your appearance for the
 4  record.
 5              MR. RYAN:  For the government, your Honor,
 6  Burton Ryan.
 7              MR. RABIN:  For the defendant, Jeffrey Rabin
 8  (phonetic).
 9              Good morning, your Honor.
10              THE COURT:  Good morning.  I believe this is
11  Mr. DePetro's first appearance before the Court.
12              Is that correct?
13              MR. RABIN:  That's correct, your Honor.
14              THE COURT:  Mr. DePetro, what I would like to
15  do is arraign you initially with regard to this charge
16  and that is to advise you as to the nature of the charge
17  and certain rights that you have.  I'm going to ask you
18  at this point to enter a plea of not guilty to the
19  information before the Court.  And then it's my
20  understanding that you wish to change that plea and we'll
21  get into that a little bit later.
22              I have before the Court a one count information
23  charging a conspiracy to money laundering and I'm going
24  to ask the government if they can put some flesh and
25  blood on this charge because I find it personally very
```

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1  confusing.

2          MR. RYAN:  Yes, Judge.

3          THE COURT:  The objects of the conspiracy; what

4  happened here.

5          MR. RYAN:  Judge, the defendant was in a

6  business, New York Acoustic, in which he had a conspiracy

7  and an association with the name -- with an individual by

8  the name of Joseph A. Costello (phonetic).  Mr. Costello

9  ran an illegal check cashing business that was

10  unlicensed, that did not file currency transaction

11  reports for transactions over $10,000.  And did not

12  maintain any record of the checks.

13          Mr. Costello also solicited his clients to

14  write checks made out to fictitious companies or to prior

15  customers which would then be forged and cashed, so that

16  the businesses that provided him the checks would receive

17  back the money without leaving any paper trail or any

18  record of the fact that they were the ones receiving the

19  money.

20          In essence, Joseph A. Costello was in business

21  between the years 1995 and November 30, 2004, cashed over

22  $700 million worth of checks in the New York Metropolitan

23  area with various companies providing them with

24  untraceable cash which they then used to -- that was

25  received without filing of any currency transaction

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1    reports which they then used to the intent to avoid IRS

2    income taxes, to pay payroll, to avoid having to pay

3    taxes to their employees, withhold taxes from their

4    employees, pay union benefit dues to their employees who

5    received cash, provide the basis for other frauds, bank

6    frauds, federal program frauds, by paying people in

7    connection with federally funded construction by -- and

8    mail frauds by providing them these forged or false

9    checks as receipts which they could then use as

10   deductions against their own expenses and fraudulently

11   deduct them for purposes for which were not accurate on

12   their own returns.

13        This caused a simple tax avoidance scheme to

14   become a money laundering scheme in the millions and

15   hundreds of millions of dollars.

16        THE COURT:  This is wrongful theft (inaudible)

17   benefit plans?

18        MR. RYAN:  Yes, Judge, because union benefit

19   and pension funds are trust funds, much like withholding

20   funds that are due and owing from the employers at the

21   time they are earned by the employee, so that if you had

22   a union employee that worked a certain number of hours,

23   that union benefit and pension fund was immediately due

24   that amount of money and the employer -- any funds the

25   employer had that were within the corporation were held

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1    in trust for that.  And, therefore, the failure to pay

2    that money is an embezzlement from a union employee or

3    pension benefit fund.

4              THE COURT:  Now, let me ask you a question and

5    I ordinarily wouldn't go through this in this detail but

6    I don't have the complaint.  It's just the way the many

7    cases start off.  My first question (inaudible) and I

8    want your client to understand what the government's

9    theory of the case is (inaudible).

10             Now, you have four objects of this conspiracy

11   that are set forth --

12             MR. RYAN:  Yes, Judge.

13             THE COURT:   -- in your information?

14             MR. RYAN:  There are a number of different

15   objects.  Now, let me go through them, so that it's clear

16   what the intention was.  The objects of the financial

17   transactions which was the cashing of the checks, which

18   effected interstate commerce were with the intent to

19   promote on the future criminal activity of cashing the

20   checks, the underlying act which is either the mail

21   fraud, the bank fraud, the pension fund fraud, the

22   federal program fraud, that I previously discussed.

23             So, promoting those, continuing to promote

24   those by the cashing of these checks and the using of the

25   money, would be one way to complete this conspiracy.

Transcription Plus II          Rosalie Lombardi

6

**Proceedings**

1              THE COURT:  So, that's subdivision A --

2              MR. RYAN:  That would be subdivision A, Judge.

3              THE COURT:  -- which is the first object of the

4    conspiracy.

5              MR. RYAN:  That's the first object of the

6    conspiracy.  The second one --

7              THE COURT:  Before we do that (inaudible)

8    government's theory with regard to 7201, 7206 of the IRS

9    --

10             MR. RYAN:  Well, the reason why you would want

11   to take cash out of your corporation, Judge, in a way

12   that couldn't be traced would be -- or to divert income

13   checks coming into your corporation would be that you

14   would not have to report them to the internal revenue

15   service and claim that it was income to the corporation

16   or to you.

17             THE COURT:  So, 7201 is the willful failure to

18   file; intending not to file income tax returns with

19   regard to these sums.

20             MR. RYAN:  Right.  And 72 -- that's correct,

21   Judge.  In 7206, it's essentially just a false filing.

22             THE COURT:  False statement.

23             MR. RYAN:  False statement relative to --

24             THE COURT:  In this case it would be an

25   omission or a false statement.


            Transcription Plus II        Rosalie Lombardi

**Proceedings**

1          MR. RYAN:  It could be an omission or it could

2    be, Judge, since many of the checks were made out to

3    former customers or even fictitious companies, names

4    supplied by Mr. Costello, the receipt and the use of

5    those checks given to an accountant and used as a false

6    deduction in the books and records of the corporation

7    would make the tax return false.

8          THE COURT:  So, the second object is the intent

9    on willfully avoiding paying the taxes by not filing a

10   return with regard to these --

11         MR. RYAN:  To the money; these sums of monies.

12         THE COURT:  And secondly, 7206, falsely state

13   or omit to state the amount of these items --

14         MR. RYAN:  That would correct, Judge.

15         THE COURT:  -- and any return --

16         MR. RYAN:  That's correct, Judge.

17         THE COURT:  -- filed by the defendant or his

18   corporation.

19         MR. RYAN:  Correct.

20         THE COURT:  All right.

21         MR. RYAN:  The third --

22         THE COURT:  (inaudible).

23         MR. RYAN:  The third method by which this

24   conspiracy could be completed would be that the

25   transactions were designed to conceal and disguise the

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1  source of the money.  That is, once you've used the --

2  once you cash the check, either from a diverted income

3  check or from a false check written or a check written by

4  a corporation, the fact that you had this cash taken away

5  from your corporation or business and then used it for

6  other purposes, you did not want to let anyone to know

7  that you were taking money out of your corporation,

8  either legitimately or illegitimately through stealing

9  it.  So you wanted to hide the fact that this money came

10  from those sources.  And that would be why cash was used

11  similar to why drug dealers use cash; to hide that it's

12  from a drug transaction.

13         THE COURT:  And the last object of the

14  conspiracy?

15         MR. RYAN:  And the last object of the

16  conspiracy could be completed by the individuals knowing

17  that by giving the checks to Mr. Costello, that he did

18  not file, that he was not going to file any currency

19  transaction report and he was not going to maintain a

20  record reflecting that the individual who received the

21  cash actually received the cash.  Any one of those four

22  purposes would complete the criminal activity.

23         THE COURT:  And on the government's theory of

24  the case, who are the co-conspirators here?

25         MR. RYAN:  The co-conspirators, Judge, are

**Proceedings**

1   Mr. Joseph A. Costello, and his customers.

2              THE COURT:  At this time, how does your client

3   plead to the information before the Court?

4              MR. RABIN:  He pleads not guilty at this time,

5   your Honor.

6              THE COURT:  Mr. DePetro, you have a right to

7   have this plea taken before Judge Wexler.  He is going to

8   be the sentencing judge in this case.  Alternatively, you

9   can choose to have the plea taken before me today.

10             At the end of the proceeding, I will make a

11   recommendation on record to Judge Wexler as to whether

12   the plea was entered knowingly and intelligently and

13   voluntarily.  And then he will review (inaudible).

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you (inaudible) before me today?

16             THE DEFENDANT:  Yes.

17             THE COURT:  There shouldn't be any surprises

18   here.  You and your attorney went through the script and

19   I am going to go through it with you now.  And that will

20   be the primary basis for the proceedings (inaudible).

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  I am going to ask the courtroom

23   deputy to swear you in.

24   **G R E G   D E P E T R O ,**

25       **having been first duly sworn, was examined and**

Transcription Plus II          Rosalie Lombardi

Proceedings

1      testified as follows:

2              THE CLERK:  State your name for the record,

3    please.

4              THE DEFENDANT:  Gregory DePetro.

5              THE COURT:  So you have been sworn in at this

6    time.  So, it's very, very important that you do so

7    (inaudible).  If there's anything you don't understand in

8    these proceedings, just ask and I will clarify it.  If

9    there's anything that you don't understand as far as any

10   of these questions, (inaudible) go through, don't

11   hesitate to ask.

12             THE DEFENDANT:  Okay.

13             THE COURT:  Could you please state your full

14   name for the record.

15             THE DEFENDANT:  Gregory DePetro.

16             THE COURT:  And your age, please?

17             THE DEFENDANT:  56.

18             THE COURT:  Are you a citizen, are you not?

19             THE DEFENDANT:  Excuse me?

20             THE COURT:  You're a citizen of the United

21   States?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And your highest schooling or

24   education?

25             THE DEFENDANT:  Twelfth grade.

Transcription Plus II        Rosalie Lombardi

**Proceedings**

1          THE COURT:  And are you presently or have you

2  recently been under the care of a physician or a

3  psychiatrist?

4          THE DEFENDANT:  No.

5          THE COURT:  In the past 24 hours, have you had

6  any narcotic drugs?

7          THE DEFENDANT:  No.

8          THE COURT:  Any medicine or pills or had any

9  alcoholic beverage?

10          THE DEFENDANT:  No.

11          THE COURT:  Have you ever been hospitalized or

12  treated for narcotic addiction?

13          THE DEFENDANT:  No.

14          THE COURT:  Is your mind clear as you stand

15  here today?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand what the purpose

18  of this proceeding is?

19          THE DEFENDANT:  Yes.

20          THE COURT:  You understand you're pleading to

21  the information that's before the Court.

22          THE DEFENDANT:  Correct.

23          THE COURT:  Mr. Rabin, you've discussed this

24  case with your client, have you not?

25          MR. RABIN:  Yes, your Honor.

Transcription Plus II         Rosalie Lombardi

**Proceedings**

1    THE COURT:  And in your opinion, does he
2  understand the rights that he'll be waiving by pleading
3  guilty?

4    MR. RABIN:  Yes, he does.

5    THE COURT:  And in your opinion, is he capable
6  of understanding the nature of these proceedings and
7  assisting in his own defense?

8    MR. RABIN:  Yes.

9    THE COURT:  Do you have any doubt as to your
10  client's competency to plead at this time?

11    MR. RABIN:  None whatsoever.

12    THE COURT:  Mr. DePetro, you have the right to
13  continue in your plea of not guilty.

14    Do you understand that you have that right?

15    THE DEFENDANT:  Yes.

16    THE COURT:  If you were to continue in that not
17  guilty plea, under the Constitution and laws of the
18  United States, you would be entitled to a speedy and a
19  public trial by a jury with the assistance of your
20  attorney with regard to this charge.

21    Do you understand that you have that right?

22    THE DEFENDANT:  Yes.

23    THE COURT:  At a trial, you would be presumed
24  to be innocent and the government would have to overcome
25  that presumption and prove your guilt by competent

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1  evidence, beyond a reasonable doubt and you would not

2  have the right if the government failed to do that, you

3  would have to show in any way or prove that you're

4  innocent of the offense.

5        And if the government failed to do that, the

6  jury would have an duty to find you not guilty.

7        Do you understand that you have those rights?

8        THE DEFENDANT:  Yes.

9        THE COURT:  During the course of a trial, the

10  witnesses for the government would have to come to court

11  and testify in your presence.  And your attorney would

12  have the right to cross-examine those witnesses for the

13  government.  Your attorney could object to evidence

14  offered by the government against you and you would have

15  the right to offer evidence on your own behalf.

16        Do you understand that you have those rights?

17        THE DEFENDANT:  Yes.

18        THE COURT:  At a trial, while you would have

19  the right to testify if you chose to do so, you are not

20  under any obligation to testify.  Under the Constitution

21  you cannot be compelled to incriminate yourself.  And if

22  you decided not to testify, the Court would instruct the

23  jury that they could not hold that against you.

24        Do you understand that you have those rights?

25        THE DEFENDANT:  Yes.

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1    THE COURT:  If you plead guilty and if I accept

2    the plea, you will be giving up your constitutional right

3    to a trial and the other rights that I just mentioned.

4    There will be no further trial of any kind and no right

5    to appeal or collaterally attack or at any time question

6    whether you are guilty or not.  A judgment of guilty will

7    be entered on the basis of your guilty plea and that

8    judgment cannot be challenged.  However, you do have the

9    right to appeal with regard to the issue of sentence.

10       Do you understand that you have those rights

11   and those responsibilities if you plead guilty?

12       THE DEFENDANT:  Yes, I do.

13       THE COURT:  If you plead guilty, I am going to

14   have to ask you questions about what you did in order to

15   satisfy myself that you are guilty of the charge to which

16   you are seeking to plead.  And you will have to answer

17   those questions and acknowledge your guilt.  Thus, you

18   will be giving up your right not to incriminate yourself.

19       Do you understand that?

20       THE DEFENDANT:  Yes.

21       THE COURT:  And are you willing to give up your

22   right to a trial and the other rights that I just

23   mentioned to you?

24       THE DEFENDANT:  Yes.

25       THE COURT:  I am going to mark at this time as

Transcription Plus II          Rosalie Lombardi

**Proceedings**

 1   Court Exhibit 1, the agreement in this case.  And I'm

 2   going to ask the government to outline the terms and

 3   conditions of it and the circumstances and conditions

 4   that are made not (inaudible) referred to on the record?

 5          MR. RYAN:  Judge, that's fine.  It's a standard

 6   cooperation agreement with the government.  The defendant

 7   is going to plead guilty to the one count information

 8   that has been filed today charging him with conspiracy to

 9   launder money in connection with Joseph A. Costello.

10          He is going to provide cooperation as set forth

11   in the agreement essentially providing us all of the

12   information and even, if necessary, potential testimony

13   concerning his association with Mr. Costello.  And to be

14   forthright and honest throughout.

15          He's also going to forfeit a certain sum of

16   money that has been negotiated based on his dealings with

17   Mr. Costello and should the government determine that

18   he's been full and fairly forthright and provided

19   substantial cooperation to the government at the

20   conclusion of the case, after he has completed all of his

21   past taxes, then we would file a letter with the Court

22   permitting the Court to sentence him at the Court's

23   discretion without regard to any sentencing guidelines.

24          THE COURT:  Okay.

25          Are those the terms and conditions that you

Transcription Plus II        Rosalie Lombardi

**Proceedings**

1  understand in this agreement?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And are you in agreement with those

4  terms and conditions?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And did you sign this agreement

7  today, Mr. DePetro?

8              THE DEFENDANT:  Yes.

9              THE COURT:  You reviewed it with Mr. Rabin

10  before you signed it?

11              THE DEFENDANT:  Yes.

12              THE COURT:  And this is your signature right

13  above Mr. Rabin's signature on this document?

14              THE DEFENDANT:  That's mine; yes.

15              THE COURT:  The government used some of the

16  terms that are often referred to as consequences of the

17  plea.  There's a maxim term of imprisonment of 20 years

18  that's by statute.  There is a minimum term of zero.

19              There's a maximum supervised release term of

20  three years, in the event that there's any term of

21  imprisonment imposed here.  If a condition of release is

22  violated, the defendant may be sentenced up to two

23  additional two years without any kind of credit for time

24  previously served in custody and previously served on

25  supervised release.

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1        There's a maximum fine which is the greatest of

2    $500,000 or two times the value of the monetary

3    instrument (inaudible) involved.

4        Restitution is to be determined by the Court

5    and that will be part of the presentence investigation

6    report that is prepared by the probation department.

7    There's also a $100 special assessment fee.  And there is

8    a criminal forfeiture in the agreement.  And (inaudible)

9    that provision is $75,000.

10        Is that correct?

11        MR. RYAN:  Today, a payment of that much was

12   made today, Judge, by the defendant.  I believe the total

13   amount is $180,000.

14        THE COURT:  I see.  Is that in the agreement?

15   I didn't pick that up.

16        MR. RYAN:  I believe that is, Judge.

17        MR. RABIN:  That is, Judge, on page 4 of the

18   agreement, paragraph G.

19        THE COURT:  So, 75 is today and then the

20   balance would be payable at some other time?

21        MR. RYAN:  That's correct, Judge.

22        THE COURT:  And the government has the right to

23   go after the proceeds and other assets (inaudible).

24        MR. RYAN:  That's correct, Judge.

25        THE COURT:  And that's your understanding?

1       THE DEFENDANT:  Yes.

2       THE COURT:  I just want to highlight one thing

3   for emphasis and that is the 5k1 letter.  A term of the

4   agreement provides that the government has to (inaudible)

5   substantial assistance and otherwise complied with all of

6   the terms and conditions of this agreement, that they

7   would issue a 5k1 letter.

8       The thing I want make clear to you is that in

9   only the rarest of cases, the Court will get involved in

10  that issue.  That's solely between you and the United

11  States Attorney's Office.  It's not the function or the

12  role of the Court to second guess.  As long as the United

13  States attorney is acting in good faith (inaudible), it's

14  in their discretion.

15      Do you understand that?

16      THE DEFENDANT:  Yes.

17      THE COURT:  If the government at this time

18  would please outline the elements of the offense for the

19  Court.

20      MR. RYAN:  Yes, Judge.  The defendant --

21      THE COURT:  I appreciate your discussion

22  earlier, which covered a lot.

23      MR. RYAN:  Yes, Judge.  The defendant is

24  charged with a conspiracy.  That is, he's required to

25  knowingly and intentionally conspire with others.  What

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1  he has to conspire to do is to conduct financial

2  transactions affecting interstate commerce which, in

3  fact, involved the proceeds of specified unlawful

4  activity.

5          Here there's a long list uttering a forged

6  security of an organization; that is, having any of the

7  checks signed, made out to fictitious companies or

8  companies that they didn't do business with without

9  authorization.  Theft from the employee benefit fund, as

10 we've previously discussed, federal program fraud, mail

11 fraud, any of those things would be the specified

12 unlawful activity.

13         And they would have to know that the money was,

14 in fact, involved in some sort of form of unlawful

15 activity or came from one of those activities.  And then

16 they would have to conduct the financial transaction with

17 one of the -- any one of the four intents that we

18 previously discussed.  And if they did so, that would be

19 a completion of the conspiracy that has been charged.

20         THE COURT:  Do you understand that a conspiracy

21 is an agreement to do an unlawful act?  The unlawful acts

22 (phonetic)?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Are you aware of the elements of

25 the offense to which you'll be pleading guilty?

Transcription Plus II          Rosalie Lombardi

Proceedings

1           THE DEFENDANT:  Yes.

2           THE COURT:  You discussed these with Mr. Rabin?

3           THE DEFENDANT:  Yes.

4           THE COURT:  You understand the nature of the

5    charge that's now before the Court and the information

6    that's been filed?

7           THE DEFENDANT:  Yes.

8           THE COURT:  And do you understand the

9    consequences of the plea, do you not?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Have you discussed the sentencing

12   guidelines with your attorney?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that the

15   sentencing guidelines are no longer mandatory but that in

16   sentencing, the district court is required to consider

17   the applicable guidelines sentencing range, along with

18   other factors?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that if the

21   sentence is more severe than you would expect, that you

22   will still be bound by your guilty plea?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And you understand that there are

25   certain circumstances under the issuance of a 5k1 letter

**Proceedings**

1   (inaudible) where the Court may depart from the

2   applicable guidelines.

3         THE DEFENDANT:  Yes.

4         THE COURT:  You understand that, as well.

5         Do you have any questions that you would like

6   to ask me with regard to the nature of the charge, your

7   rights or anything else in connection with this plea

8   (inaudible)?

9         THE DEFENDANT:  No.

10         THE COURT:  Are you ready to plead?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Mr. Rabin, do you know of any legal

13   reason why your client should not plead guilty?

14         MR. RABIN:  No, your Honor.

15         THE COURT:  Mr. DePetro, are you satisfied with

16   the legal representation that your attorney has been

17   provided to up until this point?

18         THE DEFENDANT:  Yes.

19         THE COURT:  What is your plea to the

20   information before the Court?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  Are you making the plea of guilty

23   voluntarily and of your own free will?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Has anyone threatened or forced you

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1    to plead guilty?

2                THE DEFENDANT:  No.

3                THE COURT:  And other than the agreement with

4    the government as stated on the record and has been

5    marked as Court Exhibit 1 for purposes of this

6    proceeding, has anyone made any promises that caused you

7    to plead guilty?

8                THE DEFENDANT:  No.

9                THE COURT:  Has anyone made any promise to you

10   as far as what your sentence will be in this case?

11               THE DEFENDANT:  No.

12               THE COURT:  I would like you to describe in

13   your own words exactly what did in connection with the

14   information.

15               THE DEFENDANT:  Between 1995 and 2004, I cashed

16   checks on behalf of New York Acoustic in order to make

17   certain cash payroll payments and to avoid union payments

18   and certain IRS obligations.  This was done within the

19   Eastern District of New York and done to conceal the

20   source and ownership of the proceeds and to avoid any

21   financial reporting regarding --

22   **(Counsel and client confer)**

23               THE DEFENDANT:  -- reporting requirements and

24   the payment of taxes.

25               THE COURT:  Before you actually committed the

Transcription Plus II        Rosalie Lombardi

**Proceedings**

1   (inaudible), did you conspire with someone to commit

2   those acts?

3   **(Counsel and client confer)**

4          THE DEFENDANT:  Yeah, with Joseph Costello.

5          THE COURT:  And by conspiring, you entered into

6   an agreement that you were going to (inaudible) this

7   scheme for the unlawful purposes --

8          THE DEFENDANT:  Yes.

9          THE COURT:  -- that's alleged in the

10  information before the Court?

11         THE DEFENDANT:  Correct.

12         THE COURT:  You avoided filing income taxes and

13  to avoid filing truthful statements in connection with

14  your taxes?

15         THE DEFENDANT:  Correct.

16         THE COURT:  In order to promote and continue

17  the criminal activity that was the source of these funds.

18         THE DEFENDANT:  Correct.

19         THE COURT:  What was the criminal activity that

20  is (inaudible)?

21         THE DEFENDANT:  Well, paying cash to employees

22  and avoiding union problems, IRS, stuff like that.

23         THE COURT:  And (inaudible) employee benefit

24  programs or diverted from an employee (inaudible)?

25         THE DEFENDANT:  Well, the employees knew that

Transcription Plus II          Rosalie Lombardi

**Proceedings**

```
 1   they were getting paid cash.  So, they knew they were

 2   going to get any requirements other than their cash flow

 3   -- other than the cash.

 4   (Counsel and client confer)

 5             MR. RYAN:  Judge, what that means is that --

 6             THE COURT:  (inaudible).

 7             MR. RYAN:  Right.  What occurs is that when the

 8   union employee works a certain number of hours, he's

 9   entitled -- the employer is required and money is --

10   whatever profits they have made or whatever money is

11   generated from that job is automatically in trust in the

12   employee's account to set to pay the union benefit dues.

13             What happens is by paying union employees cash,

14   what the employer's do is they take the money that should

15   have been used to pay for union benefit funds and they

16   just sue it in the regular course of their business.  And

17   what happens is hat -- since the money is held in trust,

18   as a matter of law, it's an embezzlement.

19             So, what occurs is even though there's no

20   disparate accounting or setting aside of the money in

21   their daily cash flow, as a matter of law, they've

22   misapplied the money because they haven't paid the union

23   benefit funds.

24             THE COURT:  Do you understand what Mr. Ryan

25   just said on --
```

Proceedings

1               THE DEFENDANT:  Yes.

2               THE COURT:  -- behalf of the government?

3               THE DEFENDANT:  Yes, in one way or another.  I

4      avoided to pay those pension funds or whatever.

5               THE COURT:  Do you dispute what he said

6      (inaudible)?

7               THE DEFENDANT:  Yes.

8               THE COURT:  What do you dispute?

9               THE DEFENDANT:  Oh, no, I don't dispute

10     anything.  He's correct.

11              THE COURT:  (inaudible) you just said?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Do you dispute any part of what he

14     just said?

15              THE DEFENDANT:  No, no.

16              THE COURT:  Is the government satisfied with

17     the allocution?

18              MR. RYAN:  We are satisfied, Judge.  He's

19     allocuted to the elements of the money laundering

20     conspiracy with Mr. Costello.

21              THE COURT:  At this time, I am going to ask the

22     government to outline their proof if the case were to go

23     to trial.

24              MR. RYAN:  Judge, if the case were to go to

25     trial, we have a large number of checks that were given

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1    by this defendant to Mr. Costello to be cashed.  We have,

2    from examining the places that Mr. Costello took them, to

3    process them through the banking system, we have been

4    able to reconstruct the numbers of the checks and the

5    amounts.  And as a result, we're able to show that these

6    checks were not appropriately recorded on the New York

7    Acoustics books and records, that they were diverted and

8    that many of them were made out to either fictitious

9    companies prior customers, of which the prior customers

10   are not aware that the checks were issued in their names

11   and were otherwise reflecting income or expenses that are

12   not properly reflected on the books and records of the

13   company and that Mr. Costello did not file appropriate

14   currency transaction reports for checks involving more

15   than $10,000 in cash.  And as a result, the crimes of

16   money laundering are supported.

17          THE COURT:  Is there any part of the

18   government's statement of proof in this case, if the case

19   were to go to trial, that you dispute?

20          THE DEFENDANT:  No.

21          THE COURT:  Based on all of the information

22   that's been provided here, I find that the defendant is

23   acting voluntarily  and that he fully understands his

24   rights and the consequences of his plea.  And that there

25   is a factual basis for the plea.

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1            I therefore recommend to Judge Wexler that he

2      accept the plea of guilty to the information now before

3      the Court identified as information 06-cr-210.  So, that

4      completes the plea proceeding.

5            THE DEFENDANT:  Thank you very much, Judge.

6            THE COURT:  The only other matter is the

7      presentence investigation report.  And counsel and his

8      client should check in with probation.  Just let them

9      know what happened here today.

10            MR. RABIN:  Yes.

11            THE COURT:  And they'll est up appointments and

12      so forth (inaudible) investigation as far as the

13      presentence report.

14            MR. RABIN:  Yes, your Honor.

15            THE COURT:  I just want to explain to the

16      defendant what that involves.  It's a very thorough

17      report will be prepared by the probation department.

18      They'll speak with the United States attorney and the

19      federal agents that are involved here.  They'll also seek

20      to speak to you, any witnesses that you may have, their

21      relevance (inaudible).  And that's something that you and

22      your attorney have to discuss, as far as the extent of

23      which you want to cooperate with that investigation.

24            Again, they will prepare a report that Judge

25      Wexler will consider prior to imposing sentence in your

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1  case.   In this case, the sentence (inaudible) information

2  contained in that document.   You will be provided with a

3  copy before the sentence.   And if there's anything in

4  that document that's inaccurate in your opinion, or in

5  your attorney's opinion, any factual matter or other

6  legal matter, you have the right to challenge what's said

7  in there and (inaudible) ruling by the judge as to

8  whether it's right or wrong (inaudible). You could check

9  on that.

10         Anything further from the government?

11         MR. RYAN:  No, Judge, the defendant just has to

12  be set -- bond has to be set.

13         THE COURT:  This is an initial appearance.

14         MR. RYAN:  That's right, Judge.

15         THE COURT:  What (inaudible) on bail?

16         MR. RYAN:  Judge, we would ask for a $1 million

17  unsecured bond with travel restricted to the continental

18  United States.   The defendant has a passport.   We would

19  ask counsel to surrender it to pretrial services by the

20  end of next week.   And other than that, Judge, there

21  would be no limitations.

22         THE COURT:   (inaudible)?

23         MR. RABIN:  That's acceptable.

24         THE COURT:  All right.  So, bail will be

25  (inaudible) April 7 is next Friday and he'll surrender

Transcription Plus II          Rosalie Lombardi

**Proceedings**

1  the passport.  You can do it any time before that.  And

2  it seems -- where is the (inaudible)?  It's easier to do

3  it in Brooklyn?

4          MR. RABIN:  In Brooklyn, it would be; yes.

5          THE COURT:  (inaudible).

6          MR. RABIN:  Fine, thank you.

7          THE COURT:  (inaudible) lie to the Court.  So,

8  if anyone (inaudible) government.

9          THE DEFENDANT:  Very good.

10          THE COURT:  Okay.  Anything further from the

11  government?

12          MR. RYAN:  Nothing further, Judge.  Thank you

13  very much.

14          MR. RABIN:  Thank you.

15          THE DEFENDANT:  Thank you.

16              (Matter concluded)

17                  -oOo-

18

19

20

21

22

23

24

25

C   E   R   T   I   F   I   C   A   T   E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **26th** day of **April** , 2006.

*Rosalie Lombardi*
-----------------------
Rosalie Lombardi
Transcription Plus II

Transcription Plus II          Rosalie Lombardi